EVAN R. MOSES, CA Bar No. 198099
evan.moses@ogletree.com
JULIA A. LUSTER, CA Bar No. 295031
julia.luster@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
TOWNE PARK, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALAN RAMIREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOWNE PARK, LLC, a Maryland limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. **'20CV1032 H    KSC**<br><br>**DEFENDANT TOWNE PARK, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Notice of Party with Financial Interest; Notice of Related Cases; Declaration of Julia A. Luster; Declaration of Julie Clark]<br><br>Complaint Filed: January 23, 2020<br>Trial Date: n/a |

# **TABLE OF CONTENTS**

**Page**

I. VENUE ...................................................................................................... 1

II. PLEADINGS, PROCESSES, AND ORDERS ......................................... 1

III. CLASS ACTION FAIRNESS ACT ("CAFA") JURISDICTION........... 3

A. Plaintiff's Citizenship Is Diverse From That Of Defendant Towne Park, LLC ........................................................................ 4

    1. Plaintiff Is A Citizen Of California...................................... 4

    2. Towne Park Is Not A Citizen Of California ...................... 5

    3. DOE Defendants Should Be Disregarded........................... 6

B. The Proposed Class Contains At Least 100 Members.................. 7

C. The Amount In Controversy Exceeds $5,000,000 ........................ 7

    1. Towne Park's Estimate of the Amount in Controversy ................................................................. 10

        (a) The Amount Placed in Controversy by the Waiting Time Penalties Claim Is at Least $6,907,590.00 .............................................. 10

        (b) The Amount Placed in Controversy by the Failure to Pay Wages Is at Least $895,057.50 ........ 12

        (c) The Amount Placed in Controversy by the Meal Period Claim Is at Least $1,790,115 .............. 13

        (d) The Amount Placed in Controversy by the Rest Break Claim Is at Least $$1,790,115.00 ........ 15

D. Attorneys' Fees Further Increase the Amount in Controversy ................................................................................. 16

E. Summary of Towne Park's Calculations..................................... 18

F. The Removal Is Timely................................................................ 18

IV. OTHER JURISDICTIONAL REQUIREMENTS ................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Altamirano v. Shaw Indus., Inc.*,
  No. C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013) ................... 9

*Brady v. Mercedes-Benz USA, Inc.*,
  243 F. Supp. 2d 1004 (N.D. Cal. 2002) ............................................................... 17

*Broadway Grill, Inc. v. Visa Inc.*,
  856 F.3d 1274 (9th Cir. 2017) .............................................................................. 4

*Byrd v. Masonite Corp.*,
  No. EDCV 16-35 JGB (KKX), 2016 WL 2593912 (C.D. Cal. May 5,
  2016) .................................................................................................................... 12

*Campbell v. Vitran Exp., Inc.*,
  471 Fed. Appx. 646 (9th Cir. 2012) ............................................................... 14, 15

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  135 S. Ct. 547 (2014) ....................................................................................... 3, 4

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
  899 F.3d 785 (9th Cir. 2018) ................................................................................ 16

*Goldberg v. CPC Int'l*,
  678 F.2d 1365 (9th Cir. 1982) .............................................................................. 17

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) ................................................................................ 9

*Haase v. Aerodynamics Inc.*,
  No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519 (E.D. Cal. 2009) ................ 17

*Harris v. Bankers Life & Cas. Co.*,
  425 F.3d 689 (9th Cir. 2005) ................................................................................ 19

*The Hertz Corporation v. Friend et al.*,
  559 U.S. 77 (2010) .......................................................................................... 5, 6

*Jasso v. Money Mart Express, Inc.*,
  No. 11-CV-5500 YGR, 2012 WL 699465 (N. D. Cal. Mar. 1, 2012) ............. 9, 17

*Kantor v. Wellesley Galleries, Ltd.*,
  704 F.2d 1088 (9th Cir. 1983) .............................................................................. 4

*Kenny v. Wal-Mart Stores, Inc.*,
  881 F.3d 786 (9th Cir. 2018) ................................................................................ 20

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986) ............................................................................ 4, 5

ii

Case No.

*Mackall v. Healthsource Glob. Staffing, Inc.*,
    No. 16-CV-03810-WHO, 2016 WL 4579099 (N.D. Cal. Sept. 2,
    2016) .......................................................................................................... 14, 15

*Muniz v. Pilot Travel Ctrs. LLC*,
    No. CIV. S -07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May
    1, 2007) .................................................................................................. 7, 9, 16, 17

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ........................................................................... 6

*Patel v. Nike Retail Servs., Inc.*,
    58 F. Supp. 3d 1032 (N.D. Cal. 2014) ............................................................ 12

*Ray v. Wells Fargo Bank, N.A.*,
    No. CV 11-01477 AHM, 2011 WL 1790123 (C.D. Cal. May 9,
    2011) .............................................................................................................. 12

*Rea v. Michaels Stores Inc.*,
    742 F.3d 1234 (9th Cir. 2014) ......................................................................... 19

*Rodriguez v. AT&T Mobility Servs. LLC*,
    728 F.3d 975 (9th Cir. 2013) ........................................................................ 7, 8

*Roth v. CHA Hollywood Med. Ctr.*,
    720 F.3d 1121 (9th Cir. 2013) .................................................................... 19, 20

*Salveson v. W. States Bankcard Ass'n*,
    731 F.2d 1423 (9th Cir. 1984) .......................................................................... 6

*Simmons v. PCR Tech.*,
    209 F. Supp. 2d 1029 (N.D. Cal. 2002) ........................................................... 17

*State Farm Fire & Cas. Co. v. Byrd*,
    710 F. Supp. 1292 (N.D. Cal. 1989) .................................................................. 5

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ............................................................................. 4

*Stiren v. Lowes Home Ctrs., LLC*,
    2019 WL 1958511 (C.D. Cal. May 2, 2019) ..................................................... 19

*Trahan v. U.S. Bank Nat'l Ass'n*,
    2014 U.S. Dist. LEXIS 4019 ............................................................................ 20

*Unutoa v. Interstate Hotels & Resorts, Inc.*,
    No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512 (C.D. Cal. Mar. 3,
    2015) .......................................................................................................... 14, 15

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ........................................................................... 7

*Zhao v. RelayRides, Inc.*,
    2017 U.S. Dist. LEXIS 204415 (N.D. Cal. Dec. 12, 2017) ............................... 20

DEFENDANT TOWNE PARK, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

42972300_6.docx

**Federal Statutes**

28 U.S.C.
§ 1332(d)(2) ........................................................................................ 3
§ 1332(d)(2)(A) .................................................................................. 4
§ 1332(d)(2) & (d)(6) ........................................................................ 3
§ 1332(d)(5)(A) .................................................................................. 6
§ 1332(d)(5)(B) ............................................................................. 3, 7
§§ 1441 and 1446 ...................................................................... 19, 21
§ 1441(a) .............................................................................................. 6
§ 1446(a) .............................................................................................. 3
§ 1446(b)(1) ...................................................................................... 18
§ 1446(b)(3) ...................................................................................... 19
§ 1446(d) ............................................................................................ 21
§ 1453 ................................................................................................. 19

**California Statutes**

Labor Code
§ 1194(a) ............................................................................................ 12

iv

42972300_6.docx

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF ALAN RAMIREZ AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Towne Park, LLC ("Towne Park"), by and through the undersigned counsel, hereby ") hereby effects the removal of the action entitled Alan Ramirez v. Towne Park, LLC, Case No. 37-2020-00003942-CU-OE-CTL, from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.  This removal is based on 28 U.S.C. sections 1332(d), 1441(b), and 1446(b), specifically, on the following grounds:

**I.   VENUE**

1.     Plaintiff Alan Ramirez ("Plaintiff") filed this civil action against Towne Park in the Superior Court of California, County of San Diego, on or about January 23, 2020.  The action was assigned Docket No. 37-2020-00003942-CU-OE-CTL. Venue properly lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. sections 84(a), 1391(a), and 1441(a).

**II.   PLEADINGS, PROCESSES, AND ORDERS**

2.     Plaintiff filed his Complaint on January 23, 2020, and Defendant's attorney representatives accepted service of the Complaint on March 11, 2020. Copies of the Summons, Complaint, and all other documents included in the initial service on Towne Park, are attached hereto as **Exhibit A**.  A copy of the signed and filed Notice of Acknowledgement and Receipt is attached hereto as **Exhibit B**.

3.     Towne Park timely submitted its Answer for filing in San Diego County Superior Court on April 10, 2020, in advance of the May 1, 2020 filing deadline in place in light of the state court's closure following in effect in light of the COVID-19 pandemic.  **Exhibit C**, Declaration of Julia A. Luster ("Luster Decl."), ¶3.  Because the Answer was file while the Court was closed due to the COVID-19 pandemic, it has not yet been processed as "on file." Exhibit C, Luster Decl., ¶3.  As a result, the

state court processed the filing on May 29, 2020.  Exhibit C, Luster Decl., ¶3.  A copy of the conformed copy of Towne Park's Answer, as well as proof of timely submission on April 10, 2020, is attached hereto as **Exhibit D**.  Other than the foregoing pleadings, Defendants are unaware of there being any other documents on file with the Los Angeles County Superior Court in this action.

4.    Plaintiff alleges seventeen (17) causes of action: (1) Failure to Pay All Wages, (2) Failure to Pay Overtime Wages, (3) Meal Period Violations, (4) Rest Period Violations, (5) Wage Statement Violations, (6) Waiting Time Penalties, (7) Failure to Reimburse Business Records, (8) Failure to Produce Employment Records, (9) Unfair Business Practices, (10) Private Attorney's General Act ("PAGA")-Failure to Pay All Wages, (11) PAGA-Meal Period Violations, (12) PAGA- Rest Period Violations, (13) PAGA-Wage Statement Violations, (14) PAGA-Waiting Time Penalties, (15) PAGA-Expense Reimbursement, (16) PAGA-Employment Records, and (17) PAGA-Employment Records (Section 1174).

5.    Plaintiff seeks to represent a class of "all persons employed by Defendants as non-exempt Guest Service Associates, Valets, Attendants, or in similar positions, at any time starting four years from the filing of this Complaint." (Complaint ¶26).  The class period thus runs from January 23, 2016 through the present.

6.    Plaintiff also seeks to represent the following subclasses: (1) Unpaid Wages Subclass ("All Plaintiff Class members not paid all regular wages for all hours worked.") (Complaint ¶ 27); (2) Overtime Subclass ("All Plaintiff Class members not paid all overtime wages for all hours worked over eight per day or forty per week.") (Complaint ¶ 28); (3) Meal Period Subclass ("All Plaintiff Class members who worked shifts of five hours or more without a duty-free period of at least 30 minutes, and not paid one hour at the regular rate for each of those days.") (Complaint ¶ 29); (4) Rest Period Subclass ("All Plaintiff Class who worked shifts of

four hours or a major fractions thereof without being authorized or permitted a rest period of at least 10 minutes and were not paid one hour at the regular rate for each of those days.") (Complaint ¶ 30); (5) Waiting Time Subclass ("All Plaintiff Class members to whom Defendants failed to pay all wages due to them upon termination or resignment under Labor Code, §§ 201-203.") (Complaint ¶ 31); (6) Wage Statement Subclass ("All Plaintiff Class members to whom Defendants improperly failed to provide accurate itemized wage statements under Labor Code § 226.") (Complaint ¶ 32); (7) UCL Subclass ("All members of the Unpaid Wages, Overtime, Meal Period, Rest Period and Reimbursement Subclasses.") (Complaint ¶ 33); (8) Reimbursement Subclass ("All members of the Plaintiff Class who used personal cell phones for Defendants' business purposes, but were not reimbursed.") (Complaint ¶ 34); (9) Records Request Subclass ("All members of the Plaintiff Class who made written request for employment records, signed documents, and payroll records.") (Complaint ¶ 35).

7.     This is Towne Park's first petition to remove this action to federal court.

## III.    CLASS ACTION FAIRNESS ACT ("CAFA") JURISDICTION

8.     This action is properly removable under 28 U.S.C. § 1441(a), as this Court has original jurisdiction over the action under the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1332(d)(2) & (d)(6); 28 U.S.C. § 1332(d)(5)(B). CAFA removal requires (a) a class size of at least 100 members, (b) at least one plaintiff and one defendant that are citizens of different states, and (c) an aggregate amount in controversy exceeding $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).  Each requirement is met here.

9.     The United States Supreme Court has held that under 28 U.S.C. section 1446(a), a defendant seeking to remove a case to federal court need only file "a notice of removal 'containing a short and plain statement of the grounds for removal.'"  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014).  The Court further held this language "tracks the general pleading

requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure" and that "[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 551, 553.

### A.  Plaintiff's Citizenship Is Diverse From That Of Defendant Towne Park, LLC

10.  CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which one defendant is not a citizen.  *See* 28 U.S.C. §§ 1332(d)(2)(A).  In other words, if any class member is diverse from any defendant, minimal diversity is met.  *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017) ("Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant. 28 U.S.C. § 1332(d)(2)(A). Since many merchants doing business in California, and members of the class as originally described, are not citizens of California, the requirement was met.").

### 1.  Plaintiff Is A Citizen Of California

11.  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place and [intends] to remain there permanently and/or indefinitely." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

12.  Plaintiff alleges that he "is a California resident...." Exhibit A, Complaint, ¶ 8.  Plaintiff's allegation that he is a resident of California is *prima facie* evidence that his domicile is in California, and therefore, Plaintiff is a citizen of California.  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court Complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court Complaint of residency "created a presumption of continuing residence in [state] and put the burden of

4   Case No.

1    coming forward with contrary evidence on the party seeking to prove otherwise").

2    Plaintiff's employment records regarding plaintiff Alan Ramirez likewise reflect that

3    Mr. Ramirez provided a home address in California for administrative and payroll

4    purposes throughout his employment with Towne Park.  Declaration of Julie Clark

5    ("Clark Decl."), attached hereto as **Exhibit E**, ¶ 7.

6         13.      Members of the proposed class, who by definition are or were employed

7    in California, are presumed to be primarily citizens of the State of California.  *See,*

8    *e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (finding "place of employment"

9    is an important factor weighing in favor of citizenship).  Thus, even if Plaintiff was

10    somehow a citizen of Delaware or Michigan (and there is no evidence that he is),

11    there is no possible way that the thousands of putative class members, all of whom

12    worked in California (Exhibit. A, Complaint, ¶ 13), were also citizens of Delaware or

13    Michigan.

14           **2.**      <u>**Towne Park Is Not A Citizen Of California**</u>

15         14.      Towne Park Towne Park is a Maryland corporation.  Prior to March

16    2019, Towne Park's principal place of business was Annapolis, Maryland.

17    Complaint ¶ 9; Exhibit E, Clark Decl., ¶¶ 1-3.  In March 2019, Towne Park's

18    principle place of business moved to Conshohocken, Pennsylvania, where it is

19    currently located.  Exhibit E, Clark Decl., ¶¶ 1-3.

20         15.      To determine a corporation's principal place of business, courts apply

21    the "nerve center" test, which deems the principal place of business to be the State in

22    which the corporations' officers direct, control, and coordinate the corporation's

23    activities.  *The Hertz Corporation v. Friend et al.*, 559 U.S. 77, 78 (2010) ("[T]he

24    phrase 'principal place of business' in § 1332(c)(1) refers to the place where a

25    corporation's high level officers direct, control and coordinate the corporation's

26    activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate

27    headquarters.").  Per the "nerve center" test, it is clear that Towne Park's principal

28    place of business is the State of Maryland.  *Id.; State Farm Fire & Cas. Co. v. Byrd*,

42972300_6.docx

710 F. Supp. 1292, 1293 (N.D. Cal. 1989). Specifically, when this action was commenced in state court, Towne Park was, and still is, a corporation organized under the laws of the state of Maryland. Exhibit E, Clark Decl., ¶¶ 4-7. In addition, Conshohocken, Pennsylvania is presently home to Towne Park's corporate headquarters, and this was also the case when the Complaint was filed. Exhibit E, Clark Decl.,¶ 3. As of the date of filing, Towne Park's Conshohocken, Pennsylvania office housed Towne Park's executive and administrative functions, and clearly qualifies as the company's principal place of business. Exhibit E, Clark Decl., ¶¶ 4-5. In sum, Towne Park is a citizen of the State of Maryland, where it is incorporated, or the state of Pennsylvania, where it has its principal place of business. *See Hertz Corp. v. Friend*, 559 U.S. at 78.

16. CAFA jurisdiction does not attach when the primary defendants are states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief. 28 U.S.C. § 1332(d)(5)(A). Here, Plaintiff does not names a state, state official, or other governmental entity as a defendant, nor has the state chosen to intervene in the action for any reason.

### 3. <u>DOE Defendants Should Be Disregarded</u>

17. The citizenship of fictitiously named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a). Thus, inclusion of "Doe" defendants in a state court complaint has no effect on removability. *See Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690 (9th Cir. 1998) (holding that, in determining whether diversity of citizenship exists, only the named defendants are considered); *cf. also Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (holding that the rule in the Ninth Circuit is that non-served defendants are not required to join in a removal petition). Therefore, Plaintiff's inclusion of Does 1 through 10 in the Complaint cannot defeat diversity jurisdiction.

18. Accordingly, CAFA diversity is satisfied because at least one plaintiff is diverse from at least one defendant.

42972300_6.docx

**B.    The Proposed Class Contains At Least 100 Members**

19.    CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100.  28 U.S.C. § 1332(d)(5)(B).

20.    As discussed above, Plaintiff seeks to represent "all persons employed by Defendants as non-exempt Guest Service Associates, Valets, Attendants, or in similar positions, at any time starting four years from the filing of this Complaint," which is from January 23, 2016 through the present.  Plaintiff also alleges that Towne Park "employs more than 14,000 associates" throughout California.  Plaintiff concedes that there are at least 1000 putative class members in his Complaint. Exhibit A, Complaint, ¶39.  Indeed, Towne Park's records indicate that there were at least 6,739 putative class members during the class period of January 23, 2016 through the date the Complaint was filed on January 23, 2020.  Exhibit E, Clark Decl., ¶ 8.

21.    Accordingly, there are well over 100 putative class members at issue in this action.

**C.    The Amount In Controversy Exceeds $5,000,000**

22.    Plaintiff has not alleged a specific amount in controversy in the Complaint but erroneously alleges that the amount in controversy does not exceed $5,000,000.  Exhibit A, Complaint ¶ 4.  In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  To do so, the removing defendant must "produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S -07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

42972300_6.docx

23.    Where the amount in controversy is in dispute, a reviewing Court may consider facts presented in the removal petition.  *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

24.    Plaintiff alleges that Towne Park applied "common payroll policies and practices" to Plaintiff and the putative class members, using "common administrators in central locations."  Exhibit A, Complaint ¶ 3.  Plaintiff alleges that these payroll practices, include, but are not limited to, failing to pay all wages due, failing to pay overtime premiums; failing to properly calculate the regular rate of pay for purposes of paying overtime by failing to include all forms of remuneration, including, *inter alia*, holiday pay and/or shift differentials; failing to provide rest and meal periods; failing to properly maintain records; and failing to provide accurate itemized statements for each pay period.  Exhibit A, Complaint, *passim*.  Plaintiff alleges that Plaintiff's claims are "typical of the claims of the proposed Plaintiff Class.  Plaintiff and all members of the Class and subclasses sustained injuries and damages arising out of and caused by the Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged."  Exhibit A, Complaint ¶ 41.  In his Prayer for Relief, Plaintiff asks for, amongst other things: (1) injunctive relief; (2) compensatory damages in an amount according to proof; (3) all interest accrued to date; (4) disgorgement of all amounts wrongfully obtained; (5) recovery of civil penalties and other recoverable amounts under the PAGA; (6) reasonable attorneys' fees and costs; and (7) such other relief the Court deems just and proper.

25.    The foregoing allegations fairly convey that Plaintiff asserts that each and every putative class member was deprived of earned wages on one or more occasions during the class period, and are entitled to penalties associated with this alleged deprivation.

26.    In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class

8

action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

27.    While Towne Park denies the validity of all of Plaintiff's alleged claims and requests for relief, and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class is entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum.

28.    As described further below, as well as in the concurrently filed declaration from Julie Clark,[1] the amount in controversy exceeds the jurisdictional

---

[1] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendant and its counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

minimum of $5,000,000.

### 1.    Towne Park's Estimate of the Amount in Controversy

29.    In determining the amount in controversy to support its Notice of Removal, Towne Park relies on a conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged: (1) Waiting Time Penalties; (2) Unpaid Wages; (3) Meal Break Penalties; and (4) Rest Break Penalties.  Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Towne Park does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff in his other allegations in the Complaint, including: (1) unpaid overtime; (2) violation of labor code § 221; (3) inaccurate wage statements, (4) violation of Business and Professions Code § 17200 *et seq*, and (5) PAGA penalties.  If necessary, Towne Park could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.

### (a)    The Amount Placed in Controversy by the Waiting Time Penalties Claim Is at Least $6,907,590.00

30.    In the sixth cause of action in Plaintiff's Complaint for alleged waiting time penalties, he seeks to recover penalties for himself and waiting time penalties subclass because Towne Park allegedly "had a consistent and uniform policy, practice, and procedure of willfully failing to timely pay former employees all earned wages."  Exhibit A, Complaint ¶¶ 61-65.

31.    Labor Code sections 201 and 202 require employers to pay their employees all wages due within the time required by law.  If an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced."  Exhibit A, Complaint ¶ 62.

32.    Here, because Plaintiff alleges that Towne Park willfully failed to

10

correctly calculate the regular rate of pay or pay for all time worked or paid all meal and rest break penalties, the putative class was not properly compensated for time worked during their employment, resulting in the accrual of waiting time penalties upon termination or separation.

33.    Plaintiff alleges that he worked more than eight (8) hours per day, 40 hours per week, during the class period, and he alleges that his experience is typical of the putative class and subclasses he seeks to represent.  Exhibit A, Complaint ¶¶ 15, 41.

34.    Towne Park's records reveal that during the period of January 23, 2016 through January 23, 2020, at least 3,243 of the 6,739 non-exempt putative class members were separated from employment with Towne Park.  Exhibit E, Clark Decl., ¶ 8.  The putative class had an average final rate of pay of $13.81/hour, and Towne Park's data reveals that the putative class worked on average at least 4 days per workweek on shifts typically lasting at least seven and one-tenths (7.1) hours. Exhibit E, Clark Decl., ¶ 9.  At all times relevant to this action, Towne Park has compensated all of its California employees at or above the then-applicable minimum wage.  Exhibit E, Clark Decl., ¶ 9.

35.    As Plaintiff has alleged that all employees still have not been paid at least some compensation owed to them (Exhibit A, Complaint, ¶¶ 16, 17, 20, and 45-50), Plaintiff seeks statutory penalties in the amount of 30-days' continued wages for each terminated employee between January 23, 2016 and January 23, 2020. (Exhibit A, Complaint, ¶¶ 20, 21, 31, and 62-65).

36.    In calculating the amount in controversy relating to these penalties, Towne Park is not applying the average base rate of pay of $13.81/hour.  Instead, Towne Park applies the applicable minimum wage rate as of 2016, which was only $10.00.  On this basis, the amount in controversy as to Plaintiff's waiting time penalty claim alone is **$6,907,590.00** (i.e., 3,243 employees x $10.00/hour x 7.1 hours/day x 30 days).

11

37.     Consequently, the amount placed in controversy by the waiting time penalty claim alone satisfies the jurisdictional threshold.

### (b)     The Amount Placed in Controversy by the Failure to Pay Wages Is at Least $895,057.50

38.     Plaintiff's first cause of action briefly alleges that "Defendants failed to pay minimum, regular, and overtime wages" to Plaintiff and the putative Class. Exhibit A, Complaint ¶¶ 45-47.  As a result, Plaintiff alleges that the putative class was underpaid for hours worked.  *Id.* at ¶ 16.

39.     Labor Code Section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

40.     Plaintiff has failed to allege the frequency or rate of alleged underpayments to putative class members.  Under such circumstances, a removing defendant is entitled to apply an assumed violation rate of one-hour of unpaid wages per person, per workweek.  *See, e.g.*, *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011).  Towne Park, however, is applying a much more conservative violation rate of 0.25 hours of pay for each workweek.

41.     Although on average, the putative class members were paid $13.81 per hour, Towne Park's calculations again apply the 2016 minimum wage of $10.00. Exhibit E, Clark Decl. ¶ 9; Exhibit C, Luster Decl., ¶5.

42.     Per Towne Park's records, there were 6,739 putative class members at issue from January 23, 2016 to January 23, 2020.  Exhibit E, Clark Decl. ¶ 8.  By looking at the putative class pay data and taking into account paid time off, sick

12

days, leaves of absence, or other time off, as well as tenure of employment, the putative class worked a total of 358,023 workweeks.  Exhibit E, Clark Decl. ¶ 10. With an underpayment of 15 minutes per workweek at a rate of $10.00 per hour, the amount in controversy for this claim would be $895,057.50 (i.e., 358,023 workweeks x .25 hours of allegedly unpaid wages per workweek x $10.00 an hour).

43.    As such, the amount placed in controversy by Plaintiff's failure to pay wages claim is at least **$895,057.50.**

### (c)    The Amount Placed in Controversy by the Meal Period Claim Is at Least $1,790,115

44.    In the fourth cause of action in Plaintiff's Complaint, Plaintiff seeks to recover for himself and putative class members "one (1) hour of pay at their regular rate of compensation for each workday the meal period was not provided," as well as "other compensation in amounts to be determined at trial."  Exhibit A, Complaint ¶ 52, 54.

45.    Here, Plaintiff avers that Towne Park regularly "fail[ed] to provide duty-free meal periods of at least thirty (30) minutes for shifts of five hours or more, which began before the end of the fifth hour of work, and fail[ed] to pay such employees premium wages of one (1) hour of pay at their regular rate of compensation for each workday the meal period was not provided…"  Exhibit A, Complaint ¶ 52.  Specifically, Plaintiff alleges that "Defendant's unlawful acts deprived Plaintiff and the members of the Putative Class and Subclasses [sic]" and that "Defendant willfully violated the provisions of Labor Code section 226.7 and IWC Wage Orders, including 5-2001."  Exhibit A, Complaint ¶¶ 52, 54. Additionally, Plaintiff alleges that Towne Park "had a policy and practice of not paying all wages and premiums owed" (Exhibit A, Complaint ¶ 20), and that Plaintiff and the putative class "were not paid all premium wages for non-compliant meal or rest periods" (Exhibit A, Complaint ¶ 18).

46.    When determining the amount placed in controversy by a plaintiff's

13

allegations regarding a common "practice" of meal period violations like those alleged by Plaintiff in the Complaint, an estimate of one meal period violation for every week of work is both reasonable and conservative. *See Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from California district courts have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations and allegations that defendants' 'regularly' denied class member breaks"); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving of defendant's assumption that class members missed one required meal period per week).

47.     Given Plaintiff's allegations, it is reasonable to assume, without admitting any liability of the same and for the purposes of removal only, a violation rate of one meal period per person, per workweek.  However, for purposes of this removal, Towne Park takes an even more conservative approach and assumes a violation rate of one meal period per person <u>every other workweek</u>.

48.     Per Towne Park's records, there were 6,739 putative class members at issue from January 23, 2016 to January 23, 2020.  Exhibit E, Clark Decl. ¶ 8.  By looking at the putative class records and taking into account paid time off, sick days, leaves of absence, or other time off, as well as tenure of employment, the putative class worked a total of 358,023 workweeks.  Exhibit E, Clark Decl. ¶ 10.  Although on average, the putative class members were paid $13.81 per hour, Towne Park's calculations again apply the 2016 minimum wage of $10.00.  Exhibit E, Clark Decl. ¶ 9; Exhibit C, Luster Decl., ¶5.

49.     As a result, Towne Park's computation is based on its records, which indicate that 6,739 putative class members worked 358,023 workweeks from January 23, 2016 through January 23, 2020 at a minimum rate of $10.00 per hour, and the

conservative estimate that each putative class member incurred one meal period violation every other week of work (358,023 workweeks divided by two [2] is 179,011.5 workweeks).  Exhibit E, Clark Decl., ¶¶ 8-10.  This results in exposure of $1,790,115 (i.e., 179,011.5 workweeks x 1 alleged violation per workweek x $10.00 an hour).

50.    Consequently, the amount placed in controversy by the Meal Period Claim is at least **$1,790,115.00**.

### (d)    The Amount Placed in Controversy by the Rest Break Claim Is at Least $$1,790,115.00

51.    In the fourth cause of action in Plaintiff's Complaint, Plaintiff alleges that "[b]y failing to authorize and permit Plaintiff to receive a rest period of at least 10 minutes on for every four (4) hours or major fraction thereof worked per day, and by failing to provide premium wages at the regular rate of pay when these periods were not permitted or authorized, Defendants willfully violated the provisions of Labor Code section 226.7 and IWC Wage Orders, including 5-2001," thereby depriving Plaintiff and the putative class of "premium wages and/or other compensation."  Exhibit A, Complaint, ¶¶ 56-57.

52.    As with meal period violations, an estimate of one rest break violation per week of work is both reasonable and conservative where, as here, the Plaintiff contends that that Towne Park "had a policy and practice of not paying all wages and premiums owed" (Exhibit A, Complaint ¶ 20), and that Plaintiff and the putative class "were not paid all premium wages for non-compliant meal or rest periods (Exhibit A, Complaint ¶ 18); *see, e.g.*, *Campbell*, 471 Fed. Appx. at 649; *Mackall*, 2016 WL 4579099, at *5; *Unutoa*, 2015 WL 898512, at *3.  As such, Plaintiff's allegation is for a regular violation to provide each member of the putative class a compliant rest break.

53.    Towne Park's calculation of Plaintiff's claim for rest break violations is largely similar to that of alleged meal break violations.  As with the analysis of the

alleged meal break violations above, for purposes of this removal, Towne Park takes a conservative approach and assumes a violation rate of one rest period per person every other workweek rather than every week.

54.     Towne Park's computation is therefore based on its records, which indicate that 6,739 putative class members worked 358,023 workweeks from January 23, 2016 through January 23, 2020 at a minimum rate of $10.00 per hour, and the conservative estimate each putative class member incurred one rest period violation every other week of work (358,023 workweeks divided by two [2] is 179,011.5 workweeks).  Exhibit E, Clark Decl., ¶¶ 8-10.  This results in exposure of $1,790,115.00 (i.e., 179,011.5 workweeks x 1 alleged violation per workweek x $10.00 an hour).

55.     Consequently, the amount placed in controversy by the Rest Break Claim is at least **$1,790,115.00**.

### D.     <u>Attorneys' Fees Further Increase the Amount in Controversy</u>

56.     When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy."); *Muniz*, 2007 WL 1302504 at *3 ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint.").

57.     Here, Plaintiff claims that he is entitled to attorneys' fees under the California Labor Code and Code of Civil Procedure.  Exhibit A, Complaint ¶¶ 47, 50, 54, 57, 60, 69, and 72, and *id.* Prayer for Relief, ¶J.

58.     The Court may consider all attorneys' fees that at the time of removal can reasonably be anticipated will be incurred over the life of the case.  *See Fritsch*,

16

42972300_6.docx

889 F.3d at 794 ("Because the law entitles [Plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Goldberg v. CPC Int'l*, 678 F.2d 1365, 1367 (9th Cir. 1982) (noting that "potential attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement); *Haase v. Aerodynamics Inc.*, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519, at *5 (E.D. Cal. 2009) ("[B]ecause attorney's fees are expressly authorized by statute, such fees may be included in determining the amount in controversy . . . ."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (stating that "the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred" and noting that "attorney's fees cannot be precisely calculated" but making projection of likely fees based on the court's "twenty-plus years' experience" overseeing similar cases).

59.     As detailed above, the amount in controversy for just four (4) of Plaintiff's seventeen (17) claims is at least **$11,382,877.50**.  The amount in controversy could be further increased by at least 25% to account for potential attorneys' fees.  Attorneys' fees awards in other employment actions show that attorneys' fees awards in wage-and-hour class actions can often exceed 25% of the underlying amount in controversy.  *See Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504 at *4, n.8 (noting that in California, where wage and hour class actions have settled prior to trial, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement); *see also Jasso*, 2012 WL 699465, at *7 (noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees'") (quoting *Hanlon v.*

17

*Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998)).

60.    Accordingly, if Plaintiff is successful in pursing his claims on a classwide basis, Plaintiff's attorney's' fees in this matter will be at least 25% of the amount placed in controversy through Plaintiff's claims.  For the purposes of this removal and although the attorneys' fees would be higher upon consideration of all seventeen asserted causes of cation, Towne Park calculates attorneys' fees for the two (2) claims above: (1) waiting time penalties, and (2) unpaid wages.  Attorneys' fees for these two claims alone amount to 25% of $11,382,877.50, or **$2,845,719.38**.

**E.**    **Summary of Towne Park's Calculations**

| Claim | Potential Exposure |
|---|---|
| Waiting Time Penalties | $6,907,590.00 |
| Unpaid Wages | $895,057.50 |
| Meal Period Penalties | $1,790,115.00 |
| Rest Period Penalties | $1,790,115.00 |
| Sub-Total | $11,382,877.50 |
| 25% Attorneys' Fees | $2,845,719.38 |
| **TOTAL** | **$14,228,596.90** |

61.    Consequently, the amount placed in controversy by Plaintiff's claims far exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d), even without including potential attorneys' fees or amounts from Plaintiff's other claims.

**F.**    **The Removal Is Timely**

62.    This Notice of Removal is timely.  28 U.S.C. § 1446(b) provides two 30-day windows for removing a case.  Section 1446(b)(1) specifies that a defendant must remove "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1).  If, however, "the case stated by the initial pleading is not removable, a notice of removal may be filed

within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3), 1453. In addition, the Ninth Circuit has held that a defendant may remove "when it discovers, based on its own investigation, that a case is removable." *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1123 (9th Cir. 2013). Thus, the two 30-day periods set forth in section 1446(b) are not the exclusive periods for removal. *Id.* at 1125 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines.").

63.    In short, a CAFA case "may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Roth, supra,* 720 F.3d at 1126. *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable," a defendant, in effect, "may remove at any time.").

64.    To trigger the 30-day removal periods under § 1441(b), the grounds for removal must be evident from the face of the pleadings. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). That is, the determination of removability is based on the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* If it is unclear from the complaint whether the case is removable, the pleadings are considered "indeterminate," and the 30-day removal window is not triggered. *Id.* at 693. A "defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth*, *supra*, 720 F.3d at 1125. "Even the simplest of inquiries is not required....[D]efendants are not charged with any investigation, not even into their own records." *Stiren v. Lowes Home Ctrs., LLC*, 2019 WL 1958511, *3 (C.D. Cal. May 2, 2019). Accordingly, "even if a defendant

19

could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth*, *supra*, 720 F.3d at 1125; *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).

65.    Here, Plaintiff's Complaint was indeterminate, and it was not clear from the face of the Complaint that the case was removable.  Indeed, Plaintiff alleges that "The San Diego County [state court] also has jurisdiction because individual class member claims are under the $75,000 jurisdictional threshold for federal jurisdiction and ***the aggregate claim is under $5,000,000 threshold of the Class Action Fairness Act*** of 2005 ("CAFA"), 28 U.S.C. §1332."  Exhibit A, Complaint ¶ 4 (emphasis added).

66.    Further, the Complaint does not state the number of people in the putative class or subclasses, does not specify anyone's rates of pay, and lacks substantive facts regarding the basis for Plaintiff's claims (e.g., there is no explanation as to how, why or how often employees were allegedly working off the clock, etc...).  *See, e.g., Zhao v. RelayRides, Inc.*, 2017 U.S. Dist. LEXIS 204415, *32 (N.D. Cal. Dec. 12, 2017) (plaintiff's complaint "did not reveal on its face that the action was removable under CAFA" where it "contained no specific allegations regarding the size of the two proposed classes (including whether there were more than 100 class members), or the amount of either [the plaintiff's] damages or the damages of the class as a whole"); *Trahan v. U.S. Bank Nat'l Ass'n*, 2014 U.S. Dist. LEXIS 4019, *11-12 (documents were indeterminate and did not trigger 30-day removal deadline where they "did not expressly state that the amount in controversy would exceed $5,000,000...and did not make any specific assertions about the amount of damages that might be available to the class or the value of injunctive relief").  Nor has Defendant received any other "pleading, motion, order or other paper" in this matter that revealed on its fact that this matter was removable under CAFA.

20

67.     On May 8, 2020, Plaintiff served his first set of discovery requests on Towne Park, requesting amongst other things, (1) the names and contact information for the putative class, (2) rates of pay for the putative class, (3) the definition of workweeks and workdays for the putative class, (4) the formulas used to calculate regular rates and overtime rates; and (5) all time and pay records for the putative class.  True and correct copies of the discovery requests, served via electronic means, are attached hereto as **Exhibit F**.  Following receipt of the discovery requests, Towne Park's own investigation and its efforts to respond to those requests, Towne Park determined that this case satisfied the requirements for CAFA removal at that juncture and timely filed the present Notice of Removal within thirty (30) days of receipt of the discovery requests.

## IV.     OTHER JURISDICTIONAL REQUIREMENTS

68.     All prerequisites for removal under 28 U.S.C. sections 1332(d), 1441(b), and 1446(b) have been met.

69.     Because this Court has original jurisdiction under the provisions of 28 U.S.C. section 1332(d), removal of this action is proper pursuant to 28 U.S.C. § 1441 and 1446.

70.     This Notice of Removal is filed in the District Court in which the State court action is pending.

71.     Contemporaneous with the filing of this Notice of Removal, Towne Park will file a copy of the same with the clerk of the San Diego County Superior Court.  *See* 28 U.S.C. § 1446(d).  A true and correct copy of the Notice of Removal, to be filed in San Diego County Superior Court, without the exhibits, is attached hereto as **Exhibit G**.  Written notice of the filing of this Notice of Removal has also been served upon Plaintiff.

72.     Towne Park reserves the right to amend or supplement its Notice of Removal by adding any jurisdictional defenses that may independently support a basis for removal.

21                Case No.

42972300_6.docx

73.    If any question arises as to the propriety of the removal of this action, Towne Park requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

74.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of any of Towne Park's rights to assert any defense or affirmative matter, including, but not limited to, the defenses of: (1) lack of jurisdiction over the person; (2) improper service; (3) insufficiency of process; (4) insufficiency of service of process; (5) improper joinder of claims; (6) failure to state a claim; (7) failure to join indispensable parties; or (8) any other pertinent defenses available under either California or Federal Rule of Civil Procedure 12, any State or federal statute, or otherwise.

WHEREFORE, Towne Park removes this action to this Court.


DATED: June 5, 2020                OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Julia A. Luster
      Evan R. Moses
      Julia A. Luster

Attorneys for Defendant
TOWNE PARK, LLC
evan.moses@ogletree.com
julia.luster@ogletree.com

42972300.6